DAVID PETTY, APPELLANT, VS. GEORGE H. MAYS ET ALS.,
EXECUTORS OF RICHARD JONES, APPELLEES.

1. When a court of equity, having jurisdiction of parties and of the
   subject matter in a suit to foreclose a mortgage, directs by its
   decree that the Master make sale of the property, and on such
   sale to execute and deliver a deed to the purchaser, and that
   upon the delivery of the conveyance the purchaser be let into the
   possession of the premises, the record of the decree and the deed
   constitute evidence of title in the purchaser in an action of eject-
   ment against a third person not a party to the foreclosure suit.

2. The Master's deed in such case is evidence without showing a con-
   firmation of the Master's report of sale.

3. Certain tax deeds copied by the clerk and annexed to the record in
   an ejectment suit tried before a referee, but which deeds are not
   identified by the referee in his record, or by a bill of exceptions,
   as the papers offered in evidence and rejected, cannot be con-
   sidered upon appeal : nor can the refusal of the referee to per-
   mit a witness to testify as to the location and identity of the land
   described in the tax deeds be reviewed, because the deeds are not
   in the record, and this court cannot determine that the testimony
   offered was necessary or proper.

4. A tax sale at which the owner of the land, or another person at
   the request of the owner, whose duty it was to pay the taxes,
   bids in the property and afterwards obtains a tax deed un-
   der such sale, amounts only to the payment and satisfaction of
   the tax, and confers no new title upon such purchaser.

5. Immaterial testimony, improperly admitted by a referee at the
   trial, and not affecting the judgment, is not good ground for
   granting a new trial.

6. In ejectment in this State the plea of not guilty puts in issue the le-
   gal title, and an inchoate or equitable right which might be
   available in equity cannot avail the defendant as against the le-
   gal title.

7. The possession of land by one who holds under an oral agreement
   with the owner to purchase, cannot be an adverse possession as
   against the owner of the legal title or his mortgagee.

Appeal from the Circuit Court for Duval county.

Trial and judgment by Mr. F. P. Fleming, attorney at law, as Referee.

The facts are stated in the opinion.

*C. P. & J. C. Cooper* for Appellant.

The propositions to be discussed are:

First. The referee erred in admitting the decree of foreclosure in case of Jones vs. Gordon and in admitting master's deed from Jordan to Jones. The referee erred in admitting said decree, because it was a decree in a case to which Petty, the defendant, was not a party, by which he was not bound, and was improper to show *title against him.* Haines vs. Beach, 3 Johnson, 459; Finley vs. Bank U. S., 11 Wheat., 304; 3 Philips, note 571, p. 818; 2 Daniels' Chancery, p. 1000, and note.

The objections to the master's deed are, that it is based on a decree to which Petty was not a party. To which point above authorities are cited.

That the sale does not appear from said deed to have been confirmed, and said deed does not recite the execution of the mortgage or the foreclosure of the same upon which to predicate a deed. 2 Jones on Mortgages, 1889, 1895; 2 Jones on Mortgages, 1637.

The next point to be considered by the court is, did the referee err in refusing to admit the two tax deeds of David Petty on mere objection, in the first instance, that they did not describe the property, and after evidence that Gordon knew property was advertised. We think the deeds are sufficient in their descriptive parts. The amount of definiteness required is that the owner of the property may know that his property is assessed, and description in the deed then follows that in the assessment. The owner, in this case, did know that his property was assessed, and told

Petty to purchase. Cooley's Taxation, 284; 49 N. H. Rep., 172.

Party offering deed is not compelled, in the first instance, to locate the land in descriptive part of deed. Hogans vs. Carruth, 18 Fla. Rep.

The deeds both having been recorded one year could not be attacked for imperfections in assessments, as of description of the land. Laws of Fla., Chap. 1976, Sec. 31.

The next error assigned is that the court erred in refusing to permit Charles F. Smith, a surveyor, to testify, so as to locate the lands in David Petty's two tax deeds as the same lands in suit, and to show that the lands could be located and found from the description in the deeds.

It is always competent, where any ambiguity appears in a deed, to explain it or make it certain by parol testimony, particularly as to localities and boundaries, and this was what was sought to be done here and what the referee refused to hear testimony on. We think this was wrong, if the deeds had been admitted and had been afterwards attacked on account of the improper or defective *description in the assessment*, then probably parol might not be received to aid the defect in the assessment, but the rule is different in regard to a deed. 3 Washburn's Real Property, 401; Annon vs. Baker, 49 N. H., 172; 19 Wisconsin, 397; Blakely vs. Bestor, 13 Ill., 708.

The 4th error assigned is that the court erred in permitting J. J. Forbes to testify as to contents of a written lease from Gordon to Petty on a notice to Petty to produce same; this testimony has an effect on this case as Petty claims that his possession was adverse to Gordon.

This notice was given on the 19th day of April, A. D. 1882, during the trial, and not ten days *before the trial*, as required by the statute.

Further, plaintiff, Jones, did not first prove that we had

in our possession such a lease, and did not properly connect it with this case and show its materiality.

This was not proper rebuttal testimony. The time to call for the production of this paper and make proof of its contents was on the original testimony of plaintiff, so that defendant might rebut it or explain it. McClellan's Digest, p. 516, Sec. 14; Sinclair vs. Gray, 9 Fla., p. 71; 1 Philips' Ev., 439, 440.

The 5th error assigned is that the court erred in refusing the defendant, Petty's, motion, to strike out from the evidence the decree of foreclosure in the case of Richard L. Jones vs. David Petty, and the deed from M. C. Jordan, master, to Jones. The evidence adduced showed that Petty was not a party to the foreclosure; that previous to this foreclosure Petty entered into possession under a contract to purchase, and that he paid a part of the purchase-money on this land, that in consequence of the subsequent sales for taxes, he did not pay the balance that Gordon, with whom he had the contract to purchase relinquished all claim, and by becoming Petty's tenant afterwards acknowledged Petty's adverse possession. Petty having paid part of the purchase-money and made improvements on this place, and Gordon having made the mortgage to Jones when Petty was in adverse possession, Petty should have been made a party to the foreclosure for it, and the deed thereunder, in order for it to be introduced as title against him. 3 Johnson Rep., 450; 11 Wheat., 304; 3 Philip's Ev., 818.

Also, we contend that the testimony of David Petty, W. W. Sampson and Henry Gordon shows that this mortgage from Gordon to Jones was made by Gordon while out of possession, and while Petty was in adverse possession, and said mortgage being nothing but specific lien, or conditional sale at most, is void as to Petty, and the master's

deed being made when Petty was in adverse possession is void as to him. Stoney vs. Shultz, 1 Hill Reps. or Eq. Digest, 303 ; 13 Fla. Rep., 603 ; 15 Fla. Rep., 564.

Petty's public and notorious possession should have put Jones on notice, and amounts to notice. Angel on Limitations, 376.

The 6th, 7th and 8th errors assigned all go to the same question. Under the testimony in this case, and the law governing the facts, was the referee correct in his findings and final judgment, and is the judgment of the court thereon correct ?

We think the evidence shows that David Petty, the defendant, went into the possession under a contract to purchase this place in 1874 ; that he paid a part of the purchase-money, and that Gordon, from whom he purchased, surrendered all claim to same, and that Petty was holding it as his own, which Gordon subsequently acknowledged, by allowing to him as landlord and paying him rent. That Petty has held the place ever since as his own, and that the seven years of adverse possession have run in his power.

The evidence also shows that Gordon while out of possession of this place mortgaged it to Jones, who foreclosed against Gordon, and now claims as against Petty to recover the land. We think seven years' adverse possession has completed Petty's *title*, and his holding was not in subordination to Gordon. 14 Wend., 227 ; 8 Cowen, 558; Angel's Limitation, 382 ; 17 Fla., 572.

For which reasons we think the judgment of the court should be reversed.

*John Earle Hartridge* and *Manuel C. Jordan* for Appellees.

THE CHIEF-JUSTICE delivered the opinion of the court:

This was an action of ejectment commenced by Richard Jones in the Circuit Court for Duval county and referred to a referee for trial.   The plea was not guilty.

Plaintiff to prove his title offered a deed from Daniel C. Larey to Henry Gordon, dated 20th October, 1868, duly executed and recorded during the same month.   Plaintiff next offered in evidence a decree of the Circuit Court for Duval county in chancery rendered April 1, 1881, in a suit to foreclose a mortgage executed by Henry Gordon and his wife to Richard Jones, in which Jones was complainant and Gordon and wife were defendants.   The decree was in favor of the complainant and directed the sale of the mortgaged property (the same land sued for in this action) to satisfy the money due under the mortgage, and that the master on such sale execute a deed to the purchaser, and that upon the execution and delivery of the conveyance the purchaser be let into possession of the premises.

The defendant's counsel objected to this decree as evidence on the ground that the same shows no title as against David Petty, defendant.   The referee overruled the objection and counsel excepted.

Plaintiff next offered a deed from the master named in the decree (in the usual form of master's deeds) conveying the property to Jones, plaintiff, as purchaser at the master's sale, dated May 2d, 1881.   Counsel for the defendant objected to the deed on the ground that the same shows no title as against defendant, Petty, and upon the further ground that the deed does not recite the execution of the mortgage and the foreclosure.   The objections being overruled defendant excepted.

These rulings of the referee are the grounds of the first error assigned.

In support of the exception counsel cites the well settled
rule that a decree of foreclosure binds nobody except the
parties to the suit.   We fail to discover how the rule ap-
plies here.   While the decree may not affect this defendant,
yet such decrees and sales affect the mortgagor's title to the
land and transfer that title to the purchaser.   The ques-
tion to be tried in ejectment is, whether the plaintiff's title
is better than the defendant's?   To reject the decree and
deed would prevent the plaintiff showing what title he had.
To receive them as evidence may throw upon the defendant
the onus of showing by what right he claimed possession
or title.   A regular decree of foreclosure and a deed exe-
cuted in pursuance of a sale under it have always been
supposed to divest the title of the mortgagor.

A further objection, not made before the referee, is that
the master's report of sale does not appear to have been
confirmed.   As before stated, the decree directs the master
to execute a deed to the purchaser.   According to the prac-
tice in the English Chancery Court the deed was never
executed by the master until his report of sale was con-
firmed.   That is also the practice in some of the States in
this country.   2 Jones on Mortgages, §1637 ; 2 Dan. Ch.,
5 Am. Ed., 1275.

The Supreme Court in Miller vs. Sherry, 2 Wallace, 237,
say : " The decree was regularly entered and the sale and
conveyance by the master were made in pursuance of it.   *
*   *   Where a court of equity has jurisdiction, as in this
case, a sale and conveyance in obedience to a decree is as
effectual to convey the title as the deed of the sheriff, made
pursuant to a sale under an execution issued upon a judg-
ment at law."

In the case of Fuller vs. VanGeesen, 4 Hill, N. Y., 173,
Judge Cowen for the court says : " The master's sale passed
the title presently, and the objection that this suit was pre-

maturely brought cannot avail." [The master's sale in the foreclosure proceedings was made September 11th, suit was brought October 9th, and the master's report of sale was not filed until January 12th following.] The court further says: " In England it would have been otherwise, because the deed is there withheld till the final order confirming the sale be absolute; but all their cases declare the law as it is now claimed to be by the plaintiff's counsel, viz: that the title vests at the date of the conveyance.  *   *   * Indeed, I suspect this is the first time it was ever contended that a regular deed in fee would not pass the title at the time of its delivery." In Mitchell vs. Bartlett, 51 N. Y., 447, the judgment was in the same form as that used in the present case: " that the purchaser be let into possession of the premises on production of the referee's deed," and it was held that the title vested and the right to the rents accrued on the delivery of the deed. The Supreme Court of Illinois in Jackson vs. Warren, 32 Ill., 342, say: " The counsel for the appellant seem to entertain the opinion that the appellee had no title by his purchase and master's deed, as the sale was not reported to the court and approved. The master's deed passed the title to the purchaser when it was delivered." See, also, 2 Jones on Mort., §1653.

The ruling of the referee was correct. The deed of Larey to Gordon, admitted without objection, conveyed the title to Gordon. The mortgage foreclosed appears to have been executed by Gordon and wife to Jones, to secure a loan of money, on the 30th March, 1876. The title being in Gordon, the mortgage foreclosure, the sale and the master's deed made and delivered in pursuance of the directions of the decree, vested Gordon's title in Jones, the purchaser, and the case of the plaintiff was complete.

The defendant offered in evidence a tax deed executed July 13, 1876, by the County Clerk of Duval county to

43

David Petty. Also another tax deed executed by the same clerk, on the same day, to David Petty. These deeds were objected to by plaintiff's counsel on the ground that the description of the property is uncertain and insufficient, and from it the land cannot be located. The objection was sustained and defendant excepted. This is the ground of the second assignment of error.

We are unable to know from the record what were the contents of these deeds. They are not incorporated in the record kept by the referee, nor in any bill of exceptions. We find two tax deeds following the report of the referee and his certificate of the testimony and proceedings, which certificate identifies deeds and other papers offered in evidence, but these tax deeds are not therein identified as the deeds offered by defendant; nor is there any mark on the deeds themselves showing that they are the same. Whether the ruling of the referee in refusing these deeds as evidence was correct we cannot, therefore, decide, but the presumption is that as no error is apparent none was committed.

The third error assigned being the refusal to permit a witness to testify as to the location and identity of the land described in the tax deeds, cannot be intelligently considered, because the deeds are not properly here, and we do not know whether the offered testimony was pertinent to show that the lands described were the same lands involved in this suit.

There is a large mass of testimony reported which it is unnecessary to examine in detail. The defendant and Henry Gordon both swear that in 1874 they made an oral agreement by which Gordon agreed to sell to defendant, Petty, the land in controversy, that Petty paid Gordon thirty dollars down and was to pay six hundred dollars for the property, a certain amount to be paid each year. No deed or other writing was made. No other payment than

the thirty dollars was ever made. Petty and Gordon say that Petty at the time of this bargain went into possession and made some improvements by fencing, ditching, clearing, &c., and had tenants on it. Most of the time since then (except some two years) Gordon has been on the place, agreeing to pay rent for it to Petty, at the rate of five dollars per month. No money rent was paid, but Gordon did some work for Petty. Petty states that he had other tenants on the place from time to time during nearly all the time since his agreement to purchase in 1874, who cultivated portions of the land. He further says that he " bought the land at public auction at a sale by the Tax Collector. Henry Gordon came to me in the presence of several other men and said to me, that property is to be sold to-day and you had better buy it for yourself."

Defendant's counsel then offered the said two tax deeds dated July 13th, 1876, and the referee refused to admit them. Petty says the tax sale at which he bid off the property was on the eighth day of July, 1875.

Right here, it is remarked, that the referee ruled correctly in rejecting the tax deeds. Petty bought the land at the tax sale at the request or suggestion of Gordon, the latter having the legal title to the property. No title accrued to Petty by this purchase at the tax sale, because, whether Petty was in possession as a purchaser, (or as the tenant of Gordon which plaintiff claims he was) the bidding in of the property by Petty, under the circumstances, amounted only to the payment of the taxes on the property, and the tax deed can give no valid title to parties whose duty it was to pay the taxes. Burroughs on Taxation, 352, and authorities cited ; Hilliard on Taxation, 168, and citations.

The plaintiff introduced a witness to prove that in 1874 he, the witness, was called on by Petty and Gordon to

draw up a lease of the premises by Gordon to Petty for two years. Defendant's counsel objected, but the testimony was received and exception noted by defendant. The objection was upon the ground that proper notice to produce the paper had not been given and no proof had been made that such lease was in defendant's possession or in existence.

The witness stated that he did draw up a lease at Petty's request, and it was signed by Gordon and delivered to Petty, but the witness does not know that it related to the property in question. The testimony was, therefore, immaterial, and the error, if any, in admitting the testimony without laying a proper foundation for it was also immaterial. This testimony did not affect the judgment of the referee nor the proper judgment upon the case.

The mortgage which was foreclosed appears to have been executed May 30, 1876, the legal title appearing of record to be in Gordon against whom the foreclosure decree was rendered. We have found that the title of Gordon was transferred by the decree of sale and deed of the master to the plaintiff, Jones. The defendant shows no title in himself. He claims to have been in possession as a purchaser under a verbal agreement with Gordon at the time the mortgage was executed, the legal title remaining in Gordon. He was to pay $600 for the property, of which $30 was paid down, and no further payments have been made, though he says he was to make annual payments until the $600 should be paid. The next year, in July, 1875, he says he bid off the same property at a tax sale *at the request of Gordon.* Gordon says he did not exact further payments from Petty because the State had sold the land to Petty, and that he then became Petty's tenant on the land, agreeing to pay $5 per month rent. Petty says this rent was not paid in money, that he " gave him credit for it."

He don't remember whether he turned Gordon off the place before he bought at the tax sale. He says he had possession and rented the property to several persons, and that Gordon was living on the place at the same time. Gordon was there "off and on." At the time the mortgage was given Gordon lived at East Jacksonville. Afterwards he went on the place again.

Henry Gordon testified in behalf of defendant that he sold the land to Petty in 1874. "Petty was to pay $600 for it; paid $30, and no more; the State gave him deeds, and he has held the property ever since, and I paid him rent."

It is claimed by defendant that his possession at the time of the execution of the mortgage, and at the time of the foreclosure sale, was adverse to that of Gordon and that of Jones, the plaintiff, who purchased at the master's sale. This position is not tenable. Petty's possession instead of being adverse is in law subordinate to the rights of Gordon and of his mortgagee.

The question tried in this suit is that of the legal title. An inchoate or equitable right which might be available in equity cannot avail the defendant in ejectment as against the legal title. Singleton vs. Touchard, 1 Black., U. S., 342; Mezes vs. Greer, 24 How., 268, 275. Jones shows his title and Petty shows none. He shows that he has violated his verbal agreement to purchase, and that having agreed to pay Gordon $600 he has never paid more than $30, and Gordon, who, according to the testimony, cannot be very intelligent, if he is honest, suffers Petty to obtain what they think is a tax title, and forthwith declares Petty to be his landlord and agrees to pay him rent for the use of the property, never attempting to exact the $600 for which he bargained the property. This is what the testimony of both Petty and Gordon, so far as it can be understood, goes to prove.

From the general character of their testimony it is diffi-
cult to arrive definitely at any reliable conclusion except
that Gordon having obtained Jones' money upon the mort-
gage by representing that his title is clear, after Petty had
bought in the land at his request at a tax sale, and then
after giving the mortgage, permitting Petty to obtain a tax
deed which they both pretend to believe carried the title
to Petty and destroyed the lien of the mortgage ; all which
tends to prove that the transaction was a thinly-disguised
scheme of both to cheat Jones out of his money.

If Petty was a purchaser by parol from Gordon in good
faith, went into possession, paid him for the property and
made improvements pursuant to his agreement to purchase,
he may have had a remedy in equity to compel a specific
performance as against Gordon. That would be the extent
of his rights as to the property, assuming (what is not
shown) that he acted in good faith.

The judgment is affirmed.