FLORIDA LAND HOLDING CORPORATION v. W. E. LEE, *et al.*

159 So. 7.
Opinion Filed January 15, 1934.

*William E. Thompson, Mabry, Reaves, Carlton & White* and *O. K. Reaves,* for Appellant;

*Sutton, Tillman & Reeves,* for Appellees.

Per Curiam.—Section 1026 C. G. L., 795 R. G. S., provides that when an owner recovers land upon which a tax deed has issued he must refund taxes paid and interest, and pay for any expenses and improvements. The statute in question was enacted in its present form in 1927 and has received judicial consideration since that time in the following cases: San Sebastian Dev. Co. v. Couch, 103 Fla. 692, 138 Sou. Rep. 61; Lovett v. Shore, 111 Fla. 592, 139 Sou. Rep. 194; Hecht v. Cardinal, 103 Fla. 930, 140 Sou. Rep. 648; Kane v. Eustis, 106 Fla. 817, 143 Sou. 655; Lovett v. Shore, 111 Fla. 592, 149 Sou. Rep. 603.

The Chancellor in this case decreed a lien in favor of S. Burnett, Trustee, for $9,384.95 and $750.00 attorney's fee upon certain lands which had been sold for taxes and upon which tax deeds had been applied for or issued as a result of the default in the payment of taxes thereon, from which tax certificates and the attempt of the holder to enforce them by tax foreclosure, or by securing a tax deed thereon, the Florida Land Holding Corporation, a mortgagee, as complainant in the court below, sought affirmative relief, and prayed that the tax certificates and tax deeds in controversy be decreed to be delivered up and destroyed and the holder restrained from attempting to procure a tax deed or deeds thereon. The court granted the complainant the relief prayed as to the cancellation of the tax certificates, but at the same time held and decreed that under Section 1026 C. G. L., *supra,* the tax certificate holder was entitled to have refunded to him the amount of taxes paid with interest and legal expenses as a condition to the relief granted, for which latter amounts the court adjudicated that there was a lien on the lands involved which complainant, as an interested party, should be required to discharge upon having the tax certificates attacked by him

cancelled as prayed, as against the holder of the tax deeds and tax certificates.

This appeal is by the complainant and the particular point of objection is the court's requirement that the complainant reimburse the tax certificate holder before becoming entitled to affirmative relief against the tax certificates which such holder is to be required to surrender up for cancellation.

In his final decree the Chancellor made a special finding to the effect that "the facts show that the taxes on these lands have never been paid by the complainant (Florida Land Holding Corporation), or by any of its predecessors in title to J. M. Burnett, Tax Collector of Hillsborough County, Florida, and that the tax deeds, which are now held by R. S. Burnett, Trustee, are held by him by reason of the fact that the tax sale certificates which were originally issued against the lands were settled for by the Tax Collector, and were never turned over to the original bidder at the sale, Miriam Mays Lee, for the reason that the check which was given to the Tax Collector (by the bidder at the tax sale) was not good," and held that the equities in the case were with the defendant, B. S. Burnett, Trustee, an innocent assignee of the legally issued tax certificates whose investment in the certificates was in law and in equity entitled to be made good before the complainant, a mortgagee, should have the right to demand that the certificates and tax deeds be cancelled.

A tax sale certificate is not void merely because it is made to one whose duty it was to pay the taxes for which it was issued, but in equity will be regarded as redemption where it is part of a transaction by which one whose duty it was to pay the taxes attempts thereby to defeat a lien on the property by letting it sell for taxes and then buying it in

at the tax sale in an effort to defeat the rights of lienors. See Kane v. Eustis, *supra*.

In this case the controversy is between an innocent assignee of a tax certificate and a mortgagee holding a mortgage on the same land. While it is true that the land was bid in at the tax sale by the mortgagor, not one cent of the mortgagor's money was ever paid in to the Tax Collector to complete the transaction as a tax certificate purchase by the mortgagor under circumstances that might amount to a payment of the tax, which under the law it was the mortgagor's duty to pay. Had the mortgagor's money actually been paid in to the Tax Collector pursuant to the bid which the mortgagor interposed but which his "bad" check did not satisfy, the situation would have been different.

The case is therefore one in which R. S. Burnett, as Trustee, has, by virtue of an investment of his own money, not the payment through him of money of the mortgagor or of anyone acting in his behalf, come into possession, as assignee, of certain tax certificates on certain lands which neither the land owner, nor the complainant below as the land owner's mortgagee, has ever paid the taxes on as required by law. Nor does complainant make any other pretension in this, a court of equity. It is solely by reason of the peculiar circumstances of this case growing out of the giving of a "bad" check by the Lees, as a mortgagor bidder at a tax sale, that it is contended that R. S. Burnett, Trustee, the innocent assignee of the tax certificates, should lose his money, merely because the certificates were acquired by him from the Tax Collector who was thereby forced to pay the unsatisfied bid himself and take the tax certificates from the delinquent bidder as security for his money. Stated in a different fashion, the argument is that the mortgagee complainant should profit at the Tax Collector's, or at his as-

signee's expense, to the extent of $9,384.95 unpaid taxes advanced by the Tax Collector to the State to cover an unsatisfied bid for tax sale certificates on lands which were admittedly liable to such taxes and upon which neither complainant mortgagee, nor its mortgagor, has made even the slightest claim that it was its or their moneys which have been used to pay the taxes in question.

A majority of the Court are of the opinion that the decree appealed from is just, lawful and equitable in the stated conditions it has imposed upon the appellant as a prerequisite to its being awarded the equitable relief which it affirmatively sought by its bill in the court below, and that such decree should be affirmed on the authority of the equitable maxim, "He who seeks equity must do equity," to be entitled to equitable relief.

Affirmed.

WHITFIELD, C. J., and ELLIS, TERRELL, BROWN and DAVIS, J. J., concur.

BUFORD, J. (dissenting).—The record in this case shows that on the 31st day of December, 1925, Golden Ring Groves, Inc., a corporation organized and existing under the laws of Florida, and W. E. Lee and his wife, Miriam Mays Lee, executed a mortgage in favor of First Savings & Trust Company of Tampa whereby they pledged certain lands to secure the payment of certain notes, being two notes for $12,500 each due six months after date; two notes for $12,500 each due 12 months after date and one note for $100,000 due two years after date, and with interest each at 8% per annum payable semi-annually.

On the 5th day of June, 1926, the mortgagee transferred and assigned the mortgage and the indebtedness secured thereby to one B. J. Kline. Thereafter, on the 3rd day of August, 1926, B. J. Kline assigned the mortgage and in-

debtedness secured thereby to Hannah Kline. Thereafter, on the 21st day of January, 1927, Hannah Kline, joined by her husband, B. J. Kline, assigned and transferred the mortgage and indebtedness secured thereby to Morton Kline and Norman Kline and on the 10th day of January, 1928, Morton Kline and Norman Kline transferred and assigned the mortgage and indebtedness secured thereby to Florida Land Holding Corporation, a corporation organized and existing under the laws of the State of Florida.

The notes not being paid at maturity and becoming in default, Florida Land Holding Corporation filed suit to foreclose said mortgage and a final decree therein was entered in the United States District Court in and for the Southern District of Florida, on the 14th day of February, 1930.

The mortgage contained a covenant on the part of the mortgagors to pay all taxes that might be imposed upon the premises during the continuance of the mortgage. The mortgagors failed to pay the taxes for the year 1926 and on August 1, 1927, J. M. Burnett as Tax Collector of Hillsborough County, Florida, offered the lands for sale at a sale held to sell lands in that county for the unpaid taxes of 1926. At that sale one W. E. Lee, one of the mortgagors, paid the amount of the unpaid taxes, interest and costs, and the land was struck off to W. E. Lee, who gave the Tax Collector a check signed "Miriam Mays Lee by W. E. Lee, Agent." The Tax Collector received the check in payment of the amount paid and issued tax sales certificates to Miriam Mays Lee, one of the mortgagors, and reported sale of the lands to Miriam Mays Lee.

The record shows that at that time both W. E. Lee and Miriam Mays Lee were obligated to pay the taxes.        ,

It further appears from the record that the check was not paid, but that the Tax Collector, Burnett, instead of pro-

ceeding to cancel the certificates, allowed the certificates to stand of record and he himself paid the amount due for taxes and some two years thereafter Burnett took an assignment of the tax certificates from Miriam Mays Lee in the name of R. S. Burnett, Trustee.

After the lands were sold under the foreclosure decree and after deed had been issued to the complainant, Florida Land Holding Corporation, on September 26, 1930, J. M. Burnett presented the tax sale certificates to W. A. Dickenson as Clerk of the Circuit Court for Hillsborough County, Florida, and requested the issuance of tax deed to the lands described in the certificate to R. S. Burnett, Trustee.

Thereupon, on the 28th day of October, 1930, Florida Land Holding Corporation filed its bill of complaint to enjoin the issuance of tax deed, to enjoin the transfer or assignment of the pretended tax sale certificates and to cancel the tax sale certificates.

The appeal here is from a final decree in that suit in favor of the defendants, the court holding that the certificates constituted the evidence of a lien upon the lands for the unpaid taxes for the years indicated and that the lien continued until the taxes were paid and that the lien was held by R. S. Burnett, Trustee.

The decree further provided that Florida Land Holding Corporation should have the right at any time within six months after date of decree to redeem the lands by paying to R. S. Burnett as Trustee, or his attorneys, certain sums of money therein mentioned and provided that in default of such payment R. S. Burnett as Trustee should have the right to apply to the court for appointment of a Special Master to sell the land at public outcry to the highest bidder for cash, etc.

It appears that the final decree is based upon the provisions of Section 795 R. G. S., 1026 C. G. L.

The provisions of this section can have no application whatever to the instant case. That section applies where the amount levied and assessed for taxes has become delinquent and the lands have been sold for unpaid taxes, and, therefore, either a tax sale certificate or a tax deed has been issued and the owner attempts to recover the lands from the holder under the tax deed or attempts to cancel the certificates.

In this case the mortgagor attempted to purchase tax certificates, but the mortgagor was bound to pay the taxes and, therefore, a purchase at tax sale by the mortgagor amounted to no more than the payment of the taxes, and the tax sale certificates acquired no character higher than a receipt for unpaid taxes. See Black on Tax Titles. 2 Ed. page 342, and cases there cited; Cooley on Taxation, 4th E. Vol. 3, page 2857; 2 Jones on Mortgages, 8th Ed. page 149; Jordan v. Sayre, 29 Fla. 100, 10 Sou. 823, where we said:

"A mortgagor, or his grantees of the mortgaged premises, cannot set up against the mortgagee, or his assignee, a tax title acquired at a sale for non-payment of taxes which it was the duty of the mortgagor, or those holding under him, to pay."

See also Petty v. Mays, 19 Fla. 652, wherein we said:

"A tax sale at which the owner of the land, or another person at the request of the owner, whose duty it was to pay the taxes, bids in the property and afterwards obtains a tax deed under such sale, amounts only to the payment and satisfaction of the tax, and confers no new title upon such purchaser."

We held likewise in Clermont-Minneola Country Club,

Inc., v. Copeland, 106 Fla. 11, 143 Sou. 133, in which case we said:

"There can be no question that under Section 894 and 896, Compiled Gen. Laws, 1927, taxes lawfully imposed upon real property creates a lien thereon superior to all others and remains in full force and effect until discharged. Our statutes also provide that it shall be the duty of masters in chancery to pay from the proceeds of all foreclosure sales, all taxes, State, county and municipal, also to redeem any tax certificate outstanding against said property, after paying all costs of foreclosure. Sec. 954 C. G. L. 1927; Sec. 1, Chapter 10285, Acts of 1925.

"In the excellent authority of Jones on Mortgages, the rule is stated that 'If deliquent taxes are paid out of the proceeds of a foreclosure sale by order of the Court, and the tax title is assigned to the purchaser, such assignment does not create in the purchaser a title paramount to that of a junior mortgagee whose rights are not cut off by the foreclosure sale.' 2 Jones on Mortgages (Seventh Ed.), Sec. 680.

"Under Sec. 23, Chap. 14572, Laws of 1929, as amending Sec. 779, Rev. Gen. Statutes, 1920 (Sec. 1003 R. G. S. 1927), where a tax deed foreclosure suit is instituted and a final decree is entered 'such decree shall have the force and effect of a decree foreclosing a mortgage on real estate.'

"Therefore, the Paving Company, having been made a party to this foreclosure, its lien would ordinarily be shut out and its equity under its contract lien concluded upon its failure to pay or redeem such tax certificates, *unless* under all the facts and circumstances, the paving mortgage of appellee may properly remain undisturbed upon the equitable theory that in the purchase of the tax certificates

and taking deeds thereon the taxes have been paid by the complainant whose duty it was to pay them.

"The general rule is that in the absence of a covenant to that effect no legal duty devolves upon a senior mortgagee to pay the taxes on premises for the protection of a junior mortgagee; however, when a senior mortgagee so pays taxes for the protection of the property, he is entitled as against both the mortgagor and a junior encumbrancer, to reimbursement for the sum so paid and it should be allowed in the mortgage foreclosure decree, out of the proceeds of the foreclosure sale. Jackson v. Relf, *et al., supra;* 41 C. J. 640-641. This Court has also in substance held that the mortgagor or *his grantee* cannot defeat the lien of a mortgage by acquiring a tax title thereto pursuant to a sale for taxes which it was their duty to pay. Jordan v. Sayre, 29 Fla. 110, 10 So. 823; 2 Jones on Mortgages (7th Ed.) Sec. 680."

It is contended by the appellee that the taxes have not been paid and that, therefore, J. M. Burnett and R. S. Burnett, Trustee, have a lien which they may enforce or that they are subrogated to the lien of the State for the amount of the unpaid tax. This position is not tenable because the record shows that the taxes have been paid. Though it shows that Burnett has not been repaid for the money which he advanced to pay the amount of the delinquent tax which he advanced on the faith and credit of the Lees. If a Tax Collector wishes to pay the taxes which are due to be paid by his friend, he is at liberty to do so, but he must look to his friend for reimbursement and cannot claim a lien which his friend could not have acquired.

The record shows that on the day after the tax sale Mr. Lee told Mr. Burnett that he could not then make the check good, but he promised to make it good later. Mr. Burnett,

the Tax Collector, instead of cancelling the sale and reselling the property, saw fit to put up his own money on the faith of Lee to make good the check and he reported the tax paid and actually paid the money over to the proper recipients of the tax funds included in the certificates. When he did that he voluntarily became Lee's creditor. When a long time afterwards he took an assignment of the tax certificates from Mr. Lee he took no more than an assignment of tax receipts. The assignee can neither acquire nor have any greater rights than were acquired and held by the original holder of the tax certificates. The tax certificates were void as against the prior mortgagee when issued to the mortgagor, whose duty it was to pay the tax, and a subsequent assignment of those certificates to one who paid the amount thereof to the taxing units for and on behalf of the mortgagor can give the alleged certificates no greater dignity nor infuse into them any vitality which they did not have while in the hands of the mortgagor to whom they were issued.

For the reasons stated, I think the decree should be reversed and the cause remanded.