ALTENBERND, Judge.
MB Financial Bank appeals an amended final judgment in an action for declaratory relief that addresses the rights of certain lenders in a complex loan transaction. The transaction involves a subordination and standstill agreement that created a “senior indebtedness” and a “junior indebtedness.” We conclude that the trial court erred in declaring that the senior indebtedness had been satisfied by virtue of its transfer from one owner to another. We further conclude that the trial court did not err in declaring that certain collection actions could proceed against four guarantors of the junior indebtedness. The agreement at issue in this case may have limited the ability of the owner of the junior indebtedness to obtain immediate payment from the borrower or from a guarantor, but that agreement did not prevent it from obtaining a judgment to protect its rights. To the extent that factual issues may exist in this case, they have not been tried. Accordingly, we reverse and remand this case to the trial court with guidance on the legal issues and for further proceedings, including any additional evidentiary hearing that might be needed to resolve this matter.[1]
I. THE BASIC STRUCTURE OF THIS VENTURE’S FINANCING
The record on appeal provides little information about the underlying commer *919 cial venture that needed capital. Prior to November 2006, the borrower, Fuel Investment and Development II, LLC (Fuel), had an existing loan or loans in the principal amount of at least $1,480,000[2] with a lender now known as Paragon Mortgage Holdings, LLC (Paragon). Fuel had secured this loan with a mortgage on certain property. Paragon’s loan was also protected by personal guaranties signed by four investors in Fuel.[3] The guarantors were Chandresh S. Saraiya, Jugal Taneja, Indira Lalwani, and Vipul Kabaria.
In 2006, this venture apparently needed a sizable influx of capital. Fuel contacted Broadway Bank to obtain a loan. MB Financial Bank is the successor to Broadway Bank, and this opinion will describe the lender as Broadway Bank. Broadway Bank agreed to loan Fuel $4,800,000 secured by a mortgage and also guaranteed by the same four guarantors. Paragon received $1,000,000 of the Broadway Bank loan, which was used to pay down Fuel’s loan obligations with Paragon, thereby reducing Paragon’s exposure in this venture.
In connection with the loan from Broadway Bank, the parties entered into a “Subordination and Standstill Agreement,” which will be described in greater detail later in this opinion. Broadway Bank, Paragon, and Fuel all signed this agreement. All four of the guarantors signed for Fuel, but not in their capacity as guarantors. This agreement made the larger, newer Broadway Bank loan the “senior indebtedness” and the smaller, older Paragon loan the “junior indebtedness.”
In July 2008, the note to Broadway Bank matured, and Fuel did not pay the indebtedness. Broadway Bank discussed this situation with the guarantors, who were not of a single mind on the subject. It is undisputed that, in the meantime, two of the guarantors, Chandresh S. Saraiya and Jugal Taneja, formed another entity, Downtown St. Pete Properties, LLC (Downtown Properties). Downtown Properties purchased the senior indebtedness from Broadway Bank. This purchase of all of the senior loan documents was funded by a $1,000,000 payment to Broadway Bank along with a new loan from Broadway Bank to Downtown Properties in the amount of $3,800,000. The new loan was secured by a security interest in the loan documents for the senior indebtedness with Broadway Bank, including the mortgage and guaranties. This security interest allowed Broadway Bank to recover its interest in the mortgage and guaranties in the event the bank felt its collateral was threatened.
In a nutshell, it appears that Fuel owed money to Paragon in 2008 on the junior indebtedness and it owed money to Downtown Properties as the assignee of the senior indebtedness from Broadway Bank. Downtown Properties in turn owed Broadway Bank $3,800,000. The four guarantors’ exposures on these investments were essentially divided into two groups. The two guarantors who created Downtown Properties indirectly owned the senior indebtedness on which all four guarantors were at risk. They also indirectly controlled the senior indebtedness to which *920 the Paragon loan was subordinated as the junior indebtedness.
II. THE PARAGON LAWSUITS AND THE RESULTING ACTION FOR DECLARATORY JUDGMENT
Even before Downtown Properties entered this picture, Paragon filed actions to enforce its guaranties against each of the four guarantors. These suits were consolidated. Both Downtown Properties and Broadway Bank intervened in the consolidated action. After intervening, Broadway Bank and Downtown Properties filed a pleading in which they sought declaratory relief. In essence, Broadway Bank and Downtown Properties wanted to establish that Paragon could take no action against the guarantors until the senior indebtedness was satisfied.
Paragon answered the intervenors’ pleading, raising several affirmative defenses. Most significantly, it maintained that the Broadway Bank loan to Fuel had been satisfied by virtue of its transfer to Downtown Properties.
The trial court conducted a nonjury trial of these issues in January 2010. During the first day of trial, the court familiarized itself with the documents involved in the transaction and with the legal arguments of the parties. The following morning, without receiving any evidence, the court indicated that it was “going to deny” the “motion for declaratory judgment” filed by Broadway Bank and Downtown Properties.[4] Its explanation for this outcome is best explained in its own words from the amended final judgment. It states, in pertinent part:
13. The Court determines, as a matter of law, that the Standstill Agreement did not prohibit [Paragon Mortgage, Inc.,] or its assigns, [Paragon Mortgage Holdings, LLC], from seeking enforcement of the guaranty agreements given to secure the First [Paragon Mortgage, Inc.,] Note, as distinguished from the prohibition in the Standstill Agreement from taking enforcement action against or seeking payment from [Fuel] or from the Property securing the Broadway Bank Loan. The Court finds that while the Standstill Agreement prohibited action by [Paragon Mortgage Holdings, LLC,] to enforce the indebtedness owed by the borrower, [Fuel], it did not prohibit actions by [Paragon Mortgage Holdings, LLC,] to enforce the indebtedness of the Guarantors because the indebtedness of a guarantor is distinct and separately enforceable from the primary obligation of the borrower.
14. Furthermore, by purportedly acquiring the Broadway Bank Loan, it was [Downtown Properties’] intent to obtain control over and prevent the payment in full of the Broadway Bank Loan, thereby preventing [Paragon Mortgage Holdings, LLC,] from ever being in a position to enforce the First [Paragon Mortgage, Inc.,] Note.
■ 15. The formation of [Downtown Properties] by two of the four guarantors of the First [Paragon Mortgage, Inc.,] Note and of the Broadway Bank Loan and the transaction between [Downtown Properties] and Broadway Bank after default by [Fuel] of payment of the Broadway Bank Loan were intended to defeat the intent of the parties to the Subordination and Standstill Agreement, and therefore operated as a full satisfaction of the Broadway Bank Loan.
16. The Court further finds that it would be inequitable to enforce the *921 Standstill Agreement against [Paragon Mortgage Holdings, LLC,] on the evidence presented, including, without limitation, the attempt to characterize the payment made to Broadway Bank by [Downtown Properties] as a purchase or assignment as opposed to what in substance it truly was, a payment by two of the four Guarantors of their guaranty obligation to Broadway Bank. Accordingly,
IT IS ADJUDGED that the Subordination and Standstill Agreement does not preclude collection actions by [Paragon Mortgage Holdings, LLC,] against the Guarantors of the First [Paragon Mortgage, Inc.,] Note; and even if it did otherwise preclude such action, it would be inequitable to permit the enforcement of the Standstill Agreement against [Paragon Mortgage Holdings, LLC,] under the facts presented;
IT IS ADJUDGED that [Paragon Mortgage Holdings, LLC,] may proceed with its action against the Guarantors.
This Court makes no ruling on what preclusive or collateral estoppel effect this final judgment has, if any, on any other litigation pending among the parties.
III. THE TRANSFER OF THE SENIOR INDEBTEDNESS TO DOWNTOWN PROPERTIES DID NOT OPERATE AS A FULL SATISFACTION OF THE LOAN
The trial court determined that the transfer of the loan to Downtown Properties operated as a full satisfaction of the senior indebtedness because the creation of Downtown Properties and this transaction “were intended to defeat the intent of the parties to the Subordination and Standstill Agreement.” This determination is erroneous for several reasons.
First, the trial court did not hear any testimony on this subject. The record simply contains no evidence to support a finding of any intent to defeat the intent of the subordination and standstill agreement. Second, the trial court did not declare the agreement assigning the Broadway Bank note to Downtown Properties ambiguous, and we are frankly unsure why the court was trying to determine the intent of two guarantors to defeat the intent of the subordination and standstill agreement. Finally, even assuming that the two guarantors were trying to avoid or frustrate the terms of the subordination and standstill agreement when Downtown Properties purchased the senior indebtedness loan documents, Paragon provides no legal explanation for why their intent would justify treating the transaction as the equivalent of a payment on the senior indebtedness.
No one argues that the Broadway Bank note and mortgage could not be assigned or transferred to another entity. The subordination and standstill agreement actually contains an express provision regulating the assignment of the junior indebtedness, but not the senior indebtedness. It contains a rather standard clause making its terms binding on any successor or assign.
Downtown Properties appears from this record to be a properly created legal entity that happens to be owned by two of the guarantors. No one has cited any case holding that a transfer of a note to a corporation or other legal entity, owned by some but not all of the guarantors on the note, acts as a satisfaction of the note. While such a structure may create the potential of conflicting or competing duties or responsibilities of the guarantors, we can posit no legal theory or equitable principle that would cause Fuel to be forgiven of this indebtedness as a result of this transfer.
*922 Paragon argues that this case is controlled by Hughes v. Shaner, 128 Fla. 183, 174 So. 400 (1937), and Florida Land Holding Corp. v. Lee, 118 Fla. 107, 159 So. 7 (1935). These cases recognize that in equity a tax certificate “will be regarded as redemption where it is part of a transaction by which one whose duty it was to pay the taxes attempts thereby to defeat a lien on the property by letting it sell for taxes and then buying it in [sic] at the tax sale in an effort to defeat the rights of lienors.” Florida Land Holding, 159 So. at 8; see also Hughes, 174 So. at 401. We simply do not find these cases, which involved tax deeds and tax certificates, to be controlling.
On this record, we reverse the trial court’s determination that the senior indebtedness has been satisfied.
IV. THE SUBORDINATION AGREEMENT DOES NOT PREVENT PARAGON FROM OBTAINING JUDGMENTS IN THE UNDERLYING ACTIONS
The major focus of the arguments in this appeal has centered on the right of Paragon to proceed with its lawsuits to obtain judgments against the guarantors. With one significant qualification, we conclude that the trial court reached a correct result on this issue.
The subordination and standstill agreement is eleven pages long, excluding the signature pages and attachments. It was obviously written by Broadway Bank’s attorneys and it favors that entity. It contains recitals, definitions, and several complex substantive articles. We will not recite its entire content in this opinion. The subordination provision contains a “subordination of payment” clause.[5] It clearly provides that the senior indebtedness will be paid first and that Paragon will receive no payment “by or on behalf of Borrower” directly or indirectly in cash or property until the senior indebtedness has been satisfied. The agreement also contains a “standstill” provision that broadly prevents Paragon from bringing any “enforcement action” unless the senior indebtedness has been satisfied or Paragon acquires the senior indebtedness.
In a nutshell, Paragon is upset that the two guarantors have acquired control over the senior indebtedness through its assignment to Downtown Properties because they fear the two guarantors will never completely pay off the loan to Downtown Properties in order to prevent Paragon from pursuing collection on the junior indebtedness. Although Paragon might well be able to resolve this situation by purchasing the primary indebtedness, we conclude that the language of the subordination and standstill agreement is not as restrictive as Broadway Bank and Downtown Properties argued below.
“Borrower” in this agreement refers only to Fuel. Nothing in this elaborate agreement would include the four guarantors within the definition of borrower. “Enforcement Action” is defined to include virtually any legal proceeding that one could imagine filing against the borrower or against the real property that is the collateral for these loans. Nothing in the definition of enforcement action would bar an action against a guarantor. Although the appended list of loan documents for the junior indebtedness includes the guaranties among those documents, the guarantors have not signed this agreement as guarantors and the agreement is silent on the subject of lawsuits against the guarantors.
*923 Finally, the agreement subordinates “payments.” Nothing in this agreement would appear to prevent Paragon from exercising its rights under its guaranty agreements to obtain judgments against the guarantors. If Paragon were forced to delay these suits indefinitely when the guarantors were not parties to the subordination agreement, Paragon would risk a situation in which its actions were barred by a statute of limitations. Perhaps even more important, another subsequent creditor of one of the guarantors could proceed to judgment and obtain rights superior to Paragon’s rights against that guarantor. Nothing in the agreement, including the language in the subordination or standstill provisions, requires this outcome.
Accordingly, under the unambiguous language of the agreement, Paragon can proceed to judgment against the guarantors assuming it can prove the elements of its claims against the guarantors. Once it receives a judgment, payment of that judgment will be subordinated to the senior indebtedness. Thus, if any guarantor attempted to satisfy Paragon’s judgment, the money delivered to Paragon could not be used to pay down its judgment until the senior indebtedness is paid in full. Until that time, Paragon would be required to give any “payment” to the holder of the senior indebtedness.
Accordingly, with this guidance we affirm the judgment in part, reverse the judgment in part, and remand for further proceedings.
Affirmed in part, reversed in part, and remanded.
WALLACE and KHOUZAM, JJ„ Concur.

. This court is issuing, on this same date, an opinion in a closely related case. See Abed, Inc. v. Saraiya, 85 So.3d 1132 (Fla. 2d DCA 2012).

. The amounts we provide are not intended to be binding as factual determinations, but merely approximations to provide the context of these transactions. Paragon’s lawsuit refers to two promissory notes for money it allegedly advanced to Fuel under an existing mortgage.

. The structure is somewhat more complex than described in this opinion because each of the four guarantors was a member of a separate limited liability company; the companies were the members of Fuel.

. Actually, the trial court did not "deny” declaratory relief. It declared the rights and responsibilities of the parties in a manner that was adverse to the intervenors.

. It also contains a “subordination of lien” clause.